UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

TONY PENWELL,

            Plaintiff,

v.

CHERYL STRANGE, *et al.*,

           Defendants.

CASE NO. 3:21-cv-05722-RJB-JRC

REPORT AND RECOMMENDATION

NOTED FOR: November 12, 2021

      This 42 U.S.C. § 1983 civil rights matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(A)–(B) and Local Magistrate Judge Rules 1, 3, and 4. Before the Court is plaintiff's motion for a temporary restraining order ("TRO") and preliminary injunctive relief. Dkt. 10.[1]

      Plaintiff, who proceeds *pro se* and *in forma pauperis* ("IFP"), is one of three prisoners who have now moved for preliminary injunctive relief to undo the consolidation of the

---

[1] Plaintiff has also filed motions for the appointment of counsel and for certification of a class. Dkts. 8, 9. These motions are not yet ripe for decision, and the Court will address them separately, when they are ripe.

REPORT AND RECOMMENDATION - 1

1   Washington State Reformatory (the "WSR") at the Monroe Correctional Complex (the "MCC").

2   *See* Dkt. 8, *Ejonga-Deogracias v. Strange*, 2:21-cv-01004-RJB-JRC; Dkt. 8, *Schubert v. Strange*,

3   2:21-cv-01070-RJB-JRC. The pending motion presents similar issues to those briefed by the

4   defendants and considered at length by the undersigned in the other two MCC cases. Because

5   the Court has already thoroughly discussed these issues and because a response to the motion for

6   a TRO and preliminary injunction would not be of assistance to the Court, the Court enters this

7   Report and Recommendation without awaiting (or directing) a response from defendants.

8       Plaintiff's complaint alleges that consolidation of units at the WSR resulted in

9   overcrowding that violates his constitutional rights. *See* Dkt. 7, at 4. The basis for his motion

10  for a TRO and preliminary injunction is his argument that conditions amount to deliberate

11  indifference in violation of the Eighth Amendment. Plaintiff requests that the Court pause the

12  consolidation and the transfer of prisoners to other institutions. *See* Dkt. 10, at 2. However,

13  plaintiff's evidence in support of his motion for a TRO/preliminary injunction does not show

14  deliberate indifference by prison administrators at the WSR to conditions caused by alleged

15  overcrowding during COVID-19. Therefore, plaintiff's motion should be denied.

16                              **BACKGROUND**

17  **I. Introduction**

18      Plaintiff initiated this suit in September 2021. Dkt. 1. The Court granted plaintiff

19  permission to proceed IFP and served his complaint. Dkts. 6, 11.

20      Plaintiff brings suit against the Department of Corrections ("DOC") secretary, the WSR

21  superintendent, and a WSR "CPM." Dkt. 7, at 3. In the complaint, he alleges that these

22  defendants are violating his rights to be free from cruel and unusual punishment, to due process,

23  and to equal protection by consolidating units at the WSR. *See* Dkt. 7. He alleges that this

24

consolidation has stripped individuals of their privileges without just cause (violating due process) and that prisoners are overcrowded because inhabitants of two minimum custody units are double-celled with prisoners in two medium custody units. Dkt. 7, at 5, 10. Plaintiff alleges that the capacity of the WSR was 720 with all four units and that now, 570 prisoners have been forced into the remaining two units, amounting to those units being at 158% capacity. Dkt. 7, at 6–7. Plaintiff alleges that the facility lacks adequate ventilation, heating, or cooling and that he suffers from medical conditions that require him to sleep with a "cpap" machine. Dkt. 7, at 7. He also claims that the noise level at the WSR is out of control and that it is inhumane to force prisoners to share a cell bathroom. Dkt. 7, at 7.

In addition, plaintiff alleges that consolidation during the pandemic violates his constitutional rights by taking away the ability to social distance. Dkt. 7, at 8. He also asserts that "[t]he only real safety measure that Defendants have offered to the population is a face mask" and that DOC has not offered other safety measures or has taken them away. Dkt. 7, at 9. Plaintiff asserts that defendants are placing sick prisoners in "punitive lock-up," which is aimed to discourage prisoners from self-reporting symptoms, in order to avoid having to pause the closure of the WSR. Dkt. 7, at 9.

**II. Plaintiff's Evidence**

Plaintiff's motion for a TRO/preliminary injunction rests on his argument that overcrowding during the COVID-19 pandemic violates the Eighth Amendment. *See* Dkt. 10, at 4. Plaintiff generally asserts that the risk of contracting COVID-19 is far higher for prisoners than for the general population and cites the risk of developing long-term health issues from COVID-19 infection. *See* Dkt. 10, at 4–5. Plaintiff asserts that defendants are transferring

people from the WSR as quickly as possible as a scheme to avoid any legal action preventing their planned closure of the WSR. Dkt. 10, at 5–6.

Plaintiff also specifically asserts that safety measures at the WSR have been inadequate, claiming that safety measures came "very late" or were "short lived." Dkt. 10, at 8. He asserts that hand sanitation was available for "less th[a]n 12 hours" total. Dkt. 10, at 8. Another prisoner at the WSR similarly states that the WSR only recently installed handwashing sinks, that cleaning is non-existent, and that there is little to no hand soap available. Dkt. 10-1, at 51. Plaintiff requests that the Court order DOC to stop all transfers of prisoners between prisons until the pandemic is over and to transfer all prisoners at the WSR back into single-person cells. Dkt. 10, at 11.

Plaintiff also provides other prisoners' declarations describing conditions in COVID-19 isolation cells and claiming that prisoners refuse to report feeling sick because they do not want to be taken to COVID-19 isolation cells. *See* Dkt. 10-1, at 47. One prisoner states that the cell was more like a "Punishment cell," without amenities or personal property, and that the cell was "very nasty dirty," without DOC providing cleaning supplies to the prisoner. Dkt. 10-1, at 47–48; *see also* Dkt. 10-1, at 51, 54, 75, 78 (similar declarations).

Plaintiff submits DOC guidance and memoranda, as well. A June 2020 memorandum states that staff "are still hearing that individuals are afraid to report symptoms of COVID-19 for fear of being housed in an isolation or quarantine unit" but that the COVID-19 units have recreational amenities. Dkt. 10-1, at 44. The memorandum also reminds prisoners to wear face masks when outside their assigned bunk and to observe social distancing when possible. Dkt. 10-1, at 45. A later memorandum (from September 2021) documents a group of confirmed cases in the MSU C&D units. Dkt. 10-1, at 67.

Another September 2021 memorandum documents MCC COVID-19 protocol. If staff test positive for COVID-19, the DOC will test exposed prisoners on a preset schedule. Dkt. 10-1, at 69. If one or more prisoners contract COVID-19, the unit will be placed on quarantine, with temperature tests and COVID-19 tests on a regular schedule. Dkt. 10-1, at 69.

A May 2021 DOC memorandum states that the DOC has "significant unused capacity" within facilities, amounting to at least 3,600 out of 18,000 beds remaining empty. *See* Dkt. 10-1, at 41. In light of this reduction in population and the DOC's opportunity to "rapidly advance our reentry mission," the memorandum states that units including the WSR are "being considered for closure." Dkt. 10-1, at 41 (emphasis omitted). MCC officials including defendant Jackson also authored a September 2021 memorandum citing lack of population, the increase in the reentry program, and staff vacancies and explaining that the MCC would be "methodically consolidating the population from C and D units into A and B units." Dkt. 10-1, at 72.

## DISCUSSION

**I. Legal Standard**

Temporary restraining orders are governed by the same standard applicable to preliminary injunctions. *See New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1347 n. 2 (1977). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

With respect to the showing that a plaintiff must make regarding his chances of success on the merits, the Ninth Circuit applies a sliding scale approach. "Under this approach, the elements of the preliminary injunction test are balanced, so that a stronger showing of one

element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). So long as the other two elements are met, "a preliminary injunction is appropriate when plaintiff demonstrates that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." *Id.* at 1134–35 (internal formatting and citation omitted).

The burden to achieve injunctive relief is particularly high when a party seeks a mandatory injunction. *See Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015). Mandatory injunctions go beyond an injunction preventing a party from acting, and thus beyond mere maintenance of the status quo, requiring a party to act. *Id.* Such a request should be denied unless the facts and law "clearly favor" the moving party. *Id.* (internal quotation marks and citation omitted).

Although the Court generally defers to prison administrators on matters of prison administration (*see Sandin v. Conner*, 515 U.S. 472, 483 (1985)), this deference does not require the Court to give administrators carte blanche to violate prisoners' constitutional rights. *Criswell v. Boudreaux*, No. 1:20-CV-01048-DAD-SAB, 2020 WL 5235675, at *20 (E.D. Cal. Sept. 2, 2020).

**II. Scope of the Proposed Injunction**

As a preliminary matter, the Court observes that plaintiff's desired injunctive relief (stopping double bunking and transportation and returning the WSR to single bunk status) is broad. But federal law forbids this Court from entering prospective relief in this action unless that relief is "narrowly drawn, extend[s] no further than necessary to correct the harm the court finds requires preliminary relief, and [is] the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2); *see also Fraihat v. U.S. Immigr. & Customs Enf't*, No. 20-

55634, 2021 WL 4890884, at *27 (9th Cir. Oct. 20, 2021) ("A federal court must 'tailor[ ] a remedy commensurate with the . . . specific violations' at issue in a case, and it errs where it 'impose[s] a systemwide remedy going beyond [the] scope' of those violations." (Internal citation and quotation marks omitted)).

Inasmuch as plaintiff is taking issue with specific sanitation or COVID-19 practices at the WSR, the Court cannot simply grant an injunction that directs prisoners to return to single-occupant cells as a remedy for claims that, for instance, hand sanitation has not been made available. *See* Dkt. 10, at 8. There are clearly far less restrictive and narrower means of remedying such a harm than requiring that prisoners be returned to single-occupant cells or directing the WSR to return to the previous residential arrangements. Moreover, the Court cannot grant relief directed toward those other than plaintiff—for instance ordering that the DOC cease transporting or double-celling other prisoners. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

The Court focuses, therefore, on whether plaintiff is likely to succeed on the merits of his claim that consolidation of the WSR units has resulted in overcrowding conditions that violate his Eighth Amendment rights.

**III. Likelihood of Success on the Merits**

    **A. Legal Standard**

The Eighth Amendment imposes an obligation on defendants to protect the people in their custody because they cannot protect themselves. *See Helling v. McKinney*, 509 U.S. 25, 32 (1993) ("[W]hen the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety—it

1 | transgresses the substantive limits on state action set by the Eighth Amendment." (Internal
2 | formatting and citation omitted.)).

3 |      To establish an Eighth Amendment violation, plaintiffs must show an objective and a
4 | subjective component: that is, they must show that they were "confined under conditions posing
5 | a risk of 'objectively, sufficiently serious' harm and that the officials had a 'sufficiently culpable
6 | state of mind[.]'" *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002) (quoting *Wallis v.*
7 | *Baldwin*, 70 F.3d 1074, 1076 (9th Cir. 1995)). "The subjective component requires the inmates
8 | to show that the officials had the culpable mental state, which is deliberate indifference to a
9 | substantial risk of serious harm." *Id.* (internal citation and quotation marks omitted).
10 | "Deliberate indifference" is established only when "the official knows of and disregards an
11 | excessive risk to inmate health or safety; the official must be both aware of the facts from which
12 | the inference could be drawn that a substantial risk of serious harm exists, and he must also draw
13 | the inference." *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "A prison official's
14 | duty under the Eighth Amendment is to ensure reasonable safety," and "prison officials who act
15 | reasonably cannot be found liable[.]" *Farmer*, 511 U.S. at 844–45.

16 |      **B. Deliberate Indifference**

17 |      For purposes of this Report and Recommendation, the Court assumes without deciding
18 | that plaintiff is being subjected to a sufficiently serious risk of harm of contracting COVID-19 to
19 | implicate the Eighth Amendment and focuses on whether there is a likelihood that plaintiff can
20 | establish that defendants are deliberately indifferent to that harm.

21 |      As noted, plaintiff alleges that the WSR is overcrowded because it is at 158% of its
22 | previous capacity (for units A and B). But standing alone, allegations of double-celling and
23 | overcrowding do not show a violation of the Eighth Amendment. *Doty v. Cnty. of Lassen*, 37
24 |

F.3d 540, 545 n.1 (9th Cir. 1994); *Hoptowit v. Ray*, 682 F.2d 1237, 1248–49 (9th Cir. 1982), abrogated in part on other grounds by *Sandin*, 515 U.S. 472; *Rhodes v. Chapman*, 452 U.S. 337, 348–49 (1981). Instead, the overcrowding or double-celling must be shown to have led to specific conditions violating the Eighth Amendment. *See Balla v. Idaho State Bd. of Corr.*, 869 F.2d 461, 471 (9th Cir. 1981) ("Technically, it may be said that the prison is 50% 'overcrowded,' but this fact has no constitutional significance standing alone. . . . Only when overcrowding is combined with other factors such as violence or inadequate staffing does overcrowding rise to an eighth amendment violation."); *see also Akao v. Shimoda*, 832 F.2d 119, 120 (9th Cir. 1987) (per curiam).

That officials implemented practices that resulted in overcrowding during the COVID-19 pandemic does not necessarily amount to an Eighth Amendment violation, either. *See Sanford v. Eaton*, No. 1:20-CV-00792-BAM-PC, 2021 WL 3021447, at *7 (E.D. Cal. July 16, 2021) (citing *Booth v. Newsom*, No. 2:20-cv-1562 AC P, 2020 WL 6741730, at *3 (E.D. Cal. Nov. 17, 2020); *Blackwell v. Covello*, No. 2:20-CV-1755 DB P, 2021 WL 915670, at *3 (E.D. Cal. Mar. 10, 2021)). As the *Sanford* court recognized—and as plaintiff points out—the COVID-19 pandemic has hit prisons and other facilities where people are housed together particularly hard. *See* 2021 WL 3021447, at *7. But, to prevail on his claims, plaintiff would need to show that defendants did not reasonably respond to the risk of harm. *Accord id.* at *8 ("The key inquiry is not whether Defendants perfectly responded, complied with every CDC guideline, or whether their efforts ultimately averted the risk; instead, the key inquiry is whether they 'responded reasonably to the risk.'" (Internal citation omitted.)).

Indeed here, that the WSR staff are taking at least some precautions to mitigate the spread of COVID-19 is apparent even from plaintiff's own materials. For instance, other prisoners

describe their experiences being tested or quarantined for suspected COVID-19 cases. Dkt. 10-1, at 47–48; *see also* Dkt. 10-1, at 51, 54, 75, 78 (similar declarations). Memoranda include DOC's statements directions that prisoners wear masks and try to social distance (Dkt. 10-1, at 45) as well as a mandatory quarantine and testing protocol. Dkt. 10-1, at 69. Memoranda also make clear that DOC is closing the WSR due to capacity and staffing issues, as well as the goal of increasing reentry into the community. *See* Dkt. 10-1, at 41, 72. Moreover, although plaintiff asserts that defendants are hastily transferring prisoners out of the WSR as a reason his claims have merit, if anything, that the facility will soon be closing counsels against granting plaintiff's motion for injunctive relief.

Plaintiff makes much of a consent decree formerly in place at his facility but does not provide the specifics of this consent decree or evidence regarding appropriate cell sizes other than his own belief that the square footage of his cell is too small. He also acknowledges that this decree has been vacated—and in any event, as the Court noted, overcrowding alone is not enough for plaintiff to establish an Eighth Amendment violation. Plaintiff's cited cases do not support his arguments. *See, e.g.*, *Maney v. Brown*, 464 F. Supp. 3d 1191, 1215 (D. Or. 2020) (finding that plaintiffs had not shown a likelihood of success on the merits of his deliberate indifference claim and denying a motion for preliminary injunctive relief).

As noted, the Court recently recommended denial of similar motions to reverse the consolidation of WSR units during COVID-19. *See* Dkt. 26, *Ejonga-Deogracias v. Strange, et al.*, 2:21-cv-01004-RJB-JRC; Dkt. 31, *Schubert v. Strange*, 2:21-cv-01070-RJB-JRC. As the Court explained, rulings granting preliminary injunctive relief in other district courts in this circuit have not involved similar circumstances to those presented at the WSR, counseling against granting preliminary injunctive relief in this case. In *Chatman v. Ohani*, for instance, the

District of Hawai'i granted preliminary injunctive relief where prisoners provided evidence of failure to screen or test new and transferred prisoners for COVID-19; that prisoners with unknown COVID statuses were mixed with others in shared spaces; that social distancing was not observed and sanitation was so poor that prisoners "are forced to urinate on themselves, on walls, or in cups"; that mask wearing was "inconsistent at best with minimal enforcement, if at all"; that cleaning supplies were not provided or were watered down; and that prisoners with medical conditions were neither isolated nor identified as high risk. No. CV 21-00268 JAO-KJM, 2021 WL 2941990, at *15–18 (D. Haw. July 13, 2021). That Court observed that prison administrators had clearly acted with deliberate indifference by—

> knowingly (1) transport[ing] symptomatic inmates from a facility with an active COVID-19 outbreak, (2) who told staff they were ill, (3) who were infected, (4) but whose infections were unconfirmed due to late or no testing, (5) on an airplane, (6) to a facility with no active COVID-19 cases that previously experienced an outbreak, and (7) then hous[ing] those inmates with COVID-negative inmates.

*Id.* at 19 (emphasis removed). And in another example, the Eastern District of California granted preliminary injunctive relief where prison administrators refused to implement an effective testing plan (thereby guaranteeing prisoner exposure to COVID-19), prohibited the use of masks at one point and limited the use of soap, and failed to memorialize any policies in response to the virus. *See Criswell*, 2020 WL 5235675, at *20. This case falls short of such circumstances. Plaintiff has not submitted materials in support of his TRO that, even if taken as true, amount to a showing of deliberate indifference by prison administrators at the WSR to conditions caused by alleged overcrowding during COVID-19.

Because plaintiff shows neither a likelihood of success on the merits nor that he has raised serious questions going to the merits, his motion must be denied. The Court does not

discuss the other factors that plaintiff must establish to obtain preliminary injunctive relief because the failure to show even a serious question going to the merits is dispositive of this matter.

## CONCLUSION

For the reasons set forth above, the Court recommends denying the motion for a TRO and preliminary injunction. Dkt. 10.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **November 12, 2021,** as noted in the caption.

Dated this 27th day of October, 2021.

J. Richard Creatura
Chief United States Magistrate Judge