UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

TONY PENWELL,

    Plaintiff,

v.

CHERYL STRANGE, *et al.*,

    Defendants.

CASE NO. 3:21-cv-05722-RJB-JRC

REPORT AND RECOMMENDATION

NOTED FOR: July 15, 2022

This civil rights matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1). Before the Court is defendants' motion for judgment on the pleadings. Dkt. 34.

Plaintiff, who proceeds *pro* se and who is incarcerated at the Washington State Penitentiary in Walla Walla, brings suit against the Department of Corrections ("DOC") secretary and two Washington State Reformatory ("WSR") officials related to plaintiff's time incarcerated at the WSR, part of the Monroe Corrections Center ("MCC"). He challenges these officials' handling of the COVID-19 pandemic at the WSR, after the DOC decided to

1    consolidate units within the WSR as part of the planned closure of that facility.  He asserts that

2    the resulting conditions at the WSR violate the Eighth and Fourteenth Amendments.

3        Defendants now seek judgment on the pleadings in their favor and dismissal of this

4    matter.  *See* Dkt. 34.  Plaintiff has not responded; however, the Court exercises its discretion to

5    reach the merits of the motion.  *See* Local Civil Rule 7(b)(2).

6        The Court should not dismiss plaintiff's Eighth Amendment claim at this stage because

7    he has adequately alleged unconstitutional conditions of confinement by alleging that the three

8    named defendants ordered, among other things, that prisoners who self-reported COVID-19 be

9    placed in such punitive conditions as to deter the reporting of COVID-19 symptoms and in an

10   effort to hasten the consolidation and closure of the WSR.  However, the remainder of plaintiff's

11   claims, which are under the Fourteenth Amendment, should be dismissed.  Therefore, the motion

12   for judgment on the pleadings should be granted in part and denied in part.

13                                    **BACKGROUND**

14       **I. Allegations of the Complaint**

15       Plaintiff brought suit in this Court in September 2021, in the midst of the COVID-19

16   pandemic.  *See* Dkt. 1.  According to plaintiff, the WSR is a four-unit facility with 158 single-

17   person cells that are either 54 or 60 square feet in size.  Dkt. 1, at 5.  Plaintiff asserts that during

18   the consolidation of WSR units, and despite being in the midst of a pandemic, defendants have

19   forced prisoners within two of the four units to double cell with prisoners in the other two units,

20   resulting in "dangerous [o]vercrowding conditions."  Dkt. 1, at 5–6.  He alleges that as a result,

21   570 prisoners were housed in two units, when four units were meant to hold 720 prisoners.  Dkt.

22   1, at 5–6. Plaintiff also asserts that this Court has previously entered a (since vacated) consent

23

24

1 | decree, in a 1978 lawsuit, barring the WSR from holding prisoners in such overcrowded
2 | conditions. Dkt. 1, at 6.
3 |     Plaintiff claims that this double celling is creating dangerous conditions, particularly
4 | because the WSR already does not have adequate ventilation and heating or cooling. Dkt. 1, at
5 | 7. He also claims that the noise level in the WSR is "out of control," that he is being forced to
6 | share a toilet with his cellmate, and that consolidation makes it impossible to maintain space
7 | from other prisoners during a pandemic. Dkt. 1, at 7–8.
8 |     According to plaintiff, the only meaningful safety measure that defendants have offered
9 | during the pandemic is face masks. *See* Dkt. 7, at 9. He claims that defendants have dismantled
10 | COVID-19 "stations" and notably, that in order to deter prisoners from reporting illness and to
11 | accelerate the WSR's closure, defendants are punishing those who report COVID-19 symptoms.
12 | *See* Dkt. 7, at 9.
13 |     Plaintiff also brings claims under the Fourteenth Amendment for violation of due process
14 | because the consolidation effectively strips prisoners of certain privileges and for violation of
15 | equal protection. *See generally* Dkt. 7. He seeks damages and injunctive relief. Dkt. 7, at 14.
16 |     **II. History of the Case**
17 |     Plaintiff has also filed a motion to appoint counsel, a motion to certify a class action, and
18 | a motion for a temporary restraining order. Dkts. 7–9. Related to the motion for a temporary
19 | restraining order, the Court denied plaintiff's request, explaining that the Court lacked authority
20 | to grant relief that would direct DOC to return prisoners to single-occupant cells or that would
21 | target prisoners other than plaintiff. *See* Dkt. 13, at 7. Because the Court could not grant such
22 | emergency injunctive relief, the Court narrowly construed plaintiff's claims. Dkt. 13, at 7. The
23 | Court concluded that plaintiff had not shown a likelihood of success on the merits or serious
24 |

<small>
</small>

questions going to the merits of his claims. Dkt. 13, at 11; *see also* Dkt. 29 (order adopting the report and recommendation).

The Court also attempted to appoint counsel to represent plaintiff, but the Court's appointment was contingent on the identification of counsel willing to represent plaintiff on a pro bono basis. Dkt. 23; *see also* Dkt. 33 (denying defendants' objections to the appointment of counsel). The Court was unable to locate counsel willing to represent plaintiff in the matter. *See* Dkt. 36. Therefore, plaintiff continues to represent himself, pro se. The Court denied plaintiff's request for class certification. Dkts. 24, 31.

Defendants file the pending motion for judgment on the pleadings, seeking dismissal of plaintiff's claims. Dkt. 34. Defendants have also filed a notice of dispositive motion, warning plaintiff that if the Court grants their motion, his claims may be dismissed. Dkt. 35, at 1; *see also* Dkt. 44, at 4 (directing the clerk's office to resend the notice to plaintiff); Dkt. 45 (sending the notice to plaintiff).

Plaintiff has failed to file a response to the motion for judgment on the pleadings. Plaintiff did file two motions responsive to defendants' motion: a motion to treat the motion as a summary judgment motion (or strike defendants' motion) (Dkt. 38) and a motion to strike defendants' motion. Dkt. 39. The Court denied these motions but *sua sponte* gave plaintiff additional time to respond to the motion for judgment on the pleadings, instructing him that he would be allowed to file a response. Dkt. 44, at 4–5. However, plaintiff has not availed himself of the additional time in which to file a responsive brief, so that the Court now issues a Report and Recommendation on the motion for judgment on the pleadings.

<small>REPORT AND RECOMMENDATION - 4</small>

**DISCUSSION**

**I. Legal Standard**

A motion for judgment on the pleadings is the functional equivalent of a motion to dismiss. *See Harris v. Cnty. of Orange*, 682 F.3d 1126, 1131 (9th Cir. 2012). When reviewing a motion for judgment on the pleadings, the Court accepts all factual allegations in the complaint as true and construes them in the light most favorable to the non-moving party. *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). A district court may not consider materials outside the pleadings when ruling on the motion. *See id.* at 925 & n.4. Moreover, the court must liberally construe a *pro se* party's pleadings. *Capp v. Cnty. of San Diego*, 940 F.3d 1046, 1052 (9th Cir. 2019).

**II. Discussion**

**A. Eighth Amendment Violation (Count I)**

Defendants advance a variety of reasons for dismissing plaintiff's Eighth Amendment claim. Dkt. 34, at 4–19. The Court disagrees with their arguments and recommends denying the motion for judgment on the pleadings in this regard.

"It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993). When evaluating a claim such as plaintiff's, first, the Court must determine whether objectively, "society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk. . . . [T]he prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." *Id.* at 36.

Second, the Court must consider whether each defendant acted with deliberate

indifference. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). This second consideration incorporates a subjective inquiry: "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*

Defendants argue that plaintiff has not stated a viable Eighth Amendment claim for a number of reasons. They argue that he cannot bring a claim based solely on a change in his classification status (Dkt. 34, at 5); because the Supreme Court has held that double-celling prisoners is not unconstitutional (Dkt. 34, at 5); because the consent decree that plaintiff cites was vacated (Dkt. 34, at 6); because overcrowding alone does not violate the Eighth Amendment (Dkt. 34, at 7); because his allegations about the ventilation system are speculative, do not allege a particular injury to him, and do not include allegations of deliberate indifference (Dkt. 34, at 8–9); because his allegations about medical conditions being exacerbated are too vague, do not allege particular injuries, and do not include allegations of deliberate indifference (Dkt. 34, at 10); because his allegations about fearing to take a shower are speculative and do not include allegations of deliberate indifference (Dkt. 34, at 10–11); because his allegations about the noise levels do not include allegations of deliberate indifference (Dkt. 34, at 11); and because, among other things, his allegations about sharing a toilet amount to no more than "routine discomfort." Dkt. 34, at 12.

Construed liberally and viewed as a whole, however, plaintiff's claim is not simply a conglomeration of individual claims that discrete aspects of the conditions of confinement at the WSR are unconstitutional. Rather, plaintiff brings one "count" (Dkt. 7, at 4 (formatting

REPORT AND RECOMMENDATION - 6

omitted)) of an Eighth Amendment violation based on the conditions of his confinement and alleges that *overall*, the various conditions that he mentions compounded with each other and with the COVID-19 pandemic, amounting to unconstitutional conditions of confinement. Viewed through this lens, plaintiff has alleged a viable claim.

Defendants also argue that plaintiff cannot show that he faces an objectively serious risk of harm from contracting COVID-19. *See* Dkt. 34, at 14. But the Eighth Amendment does not require that a prisoner in fact contract a "serious, communicable disease" before there is a viable claim for unconstitutional conditions of confinement. *Helling*, 509 U.S. at 33 ("It would be odd to deny an injunction to inmates who plainly proved an unsafe, life-threatening condition in their prison on the ground that nothing yet had happened to them."). The Court has little difficulty concluding that plaintiff has plausibly alleged conditions contrary to contemporary standards of decency and joins multiple other courts faced with similar allegations. *See, e.g.*, *Wilson v. Williams*, 961 F.3d 829, 840 (6th Cir. 2020) ("The COVID-19 virus creates a substantial risk of serious harm leading to pneumonia, respiratory failure, or death."); *Burgess v. Newsom*, No. 121CV00077SABPC, 2021 WL 4061611, at *2 (E.D. Cal. Sept. 7, 2021) ("It is clear that COVID-19 poses a substantial risk of serious harm."), *report and recommendation adopted*, 2021 WL 4975140 (Oct. 25, 2021); *Torres v. Milusnic*, 472 F. Supp. 3d 713, 728 (C.D. Cal. 2020) ("Petitioners show they are at substantial risk of exposure to COVID-19, which is inconsistent with contemporary standards of human decency."). Defendants' arguments that a deadly pandemic that spreads easily in close quarters—such as a prison—is not a sufficiently serious threat to implicate the Eighth Amendment border on the frivolous.

Defendants alternatively argue that they cannot be held liable where they responded reasonably, albeit imperfectly, to a risk of harm such as contracting COVID-19. *See* Dkt. 34, at

14. But defendants ignore that plaintiff has also alleged that the response to COVID-19 at the WSR has been manifestly unreasonable. According to plaintiff, defendants are purposely ignoring the risk of contracting COVID-19 at the facility by punishing the self-report of COVID-19 symptoms. Whether or not plaintiff is able to prove such allegations is another matter. But if true, such allegations would certainly amount to deliberate indifference. *Accord Banks v. Booth*, 459 F. Supp. 3d 143, 158 (D.D.C. 2020) (finding a likelihood of showing deliberate indifference where, among other things, prisoners asserted that the punitive conditions of isolation were effectively encouraging prisoners to hide their symptoms).

Defendants also assert that plaintiffs' allegations about discouraging self-reported symptoms are "rank speculation" and too conclusory to be taken as true in response to their motion. Dkt. 34, at 16. On this point, the complaint includes the following:

> The only real safety measures Defendants have offered to the population is a face mask[;] however, [even that] came late in the Pandemic.
> . . . Other safety measures DOC never produced, or they were very short in coming, mostly found excuses why the safety measure was taken away. . . .
> . . . Defendants at the WSR have dismantled the COVID Stations, have been placing sick and suspected sick in punitive lock-up (IMU) where they [are] treated punitively, in hope of keeping people from reporting being sick to [accelerate] the closure of the facility.
> . . . Defendants are falsifying the real numbers of active cases to [accelerate] closure of the facility to less[e]n the possibility of having their "plan" paused from moving forward.

Dkt. 7, at 9.

Plaintiff has provided an alleged motive (closing the WSR as quickly as possible) and a plan (discouraging prisoners from self-reporting symptoms). It is unclear exactly how he could more plausibly allege a "sinister motive" on behalf of defendants without having the opportunity to engage in discovery or without manufacturing allegations that would be based on facts not

within his personal knowledge.

Defendants attempt to draw a parallel to the conclusory allegations in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), which merited dismissal. There, allegations that high-ranking government officials adopted an unconstitutional policy subjecting a Pakistani citizen to harsh conditions of confinement on the basis of his race, religion, or national origin were implausible. The complaint alleged that these defendants were the principal architect of or instrumental in the policies at issues—but these allegations were too "conclusory" in nature to be entitled to the presumption of truth. *Id.* at 681. The complaint also alleged that discrimination was the motivating factor behind the arrest and detention at issue, but the factual allegations relevant to this point were implausible because the allegations also included an "obvious alternative explanation"—detention of those with potential connections to those who committed terrorist attacks. *Id.*

Here, however, plaintiff has included multiple factual allegations of matters to support his conclusion that defendants were deliberately indifferent to the threat of COVID-19. There is no "obvious alternative explanation" for closing COVID-19 stations or making COVID-19 isolation conditions so punitive that it would discourage the self-report of COVID-19 symptoms. Defendants notably point to no other allegations in the complaint that (like the allegations in *Iqbal*) would create a ready and more likely explanation for their alleged actions in this regard. *See* Dkt. 34, at 16–17.

Defendants argue that "[p]rison is always 'punitive'" and that it is unclear what plaintiff means by alleging "punitive lock-up." Dkt. 34, at 17. The Court disagrees—plaintiff is clearly alleging that conditions of isolation are unnecessarily harsh to an extent designed to deter self-reporting symptoms and that he is at a heightened risk of contracting COVID-19 as a result.

1 | These allegations are, at this early stage, sufficiently clear to survive and are obviously alleging
2 | more than the conditions inherent to confinement.
3 |       Defendants assert that plaintiff has not explained how or when any particular defendants
4 | made the decision to place infected patients in punitive conditions. Dkt. 34, at 18. First, the
5 | Court notes that defendants do not differentiate between plaintiff's claims for injunctive relief
6 | and damages. *But see Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) ("In analyzing this
7 | relationship between deliberate indifference and the constitutional deprivation, we believe it is
8 | important to distinguish the causal connection required when a plaintiff seeks injunctive or
9 | declaratory relief as opposed to damages. When a prisoner seeks injunctive or declaratory relief
10 | against a myriad of prison personnel responsible for operating a prison, we focus on whether the
11 | combined acts or omissions of the state officials responsible for operating the state's penal
12 | system created living conditions that violate the eighth amendment."); *see also* Dkt. 7, at 14
13 | (plaintiff's allegations that he seeks relief including "Temporary & Preliminary & Injunctions,
14 | Damages[.]"). Plaintiff has alleged that three personnel with operational roles in the WSR or the
15 | DOC took combined actions that resulted in conditions during the pandemic violating his Eighth
16 | Amendment rights. This is enough to state a claim for injunctive relief under the Eighth
17 | Amendment.
18 |       Moreover, plaintiff has specifically alleged that the various defendants (a DOC secretary
19 | and two WSR employees or officials) ordered the actions at issue to be carried out, including
20 | implementing the consolidation plan (and promulgating various memoranda to that effect) and
21 | effecting punitive conditions for COVID-19 patients to deter self-reporting symptoms. It is a
22 | reasonable inference from plaintiff's many detailed allegations about conditions at the WSR that
23 | these defendants knew of and disregarded the allegedly unlawful conditions of confinement.
24 |

Plaintiff has gone beyond simply alleging supervisory liability. *See Wilson v. Seiter*, 501 U.S. 294, 303 (1991). He has alleged that the defendants are responsible for directing the alleged violations. Whether or not such allegations can be proved is one matter, but these allegations are specific enough to survive a motion for judgment on the pleadings. Similarly, plaintiff's allegations obviously include that each defendant was aware of the conditions of which plaintiff complains because, for instance, defendants directed the use of punitive conditions to artificially reduce reported COVID-19 cases. *But see* Dkt. 34, at 14.

Finally, defendants assert that plaintiff's allegations about losing the right to a single-person cell and to a television (which undergird his second claim for relief) must be the punitive conditions that he is referring to and that such conditions do not amount to an Eighth Amendment violation. Dkt. 34, at 18. Reviewing plaintiff's allegations demonstrates that he is clearly alleging the loss of privileges such as his television and single-cell status as part of a separate claim, which is that the consolidation of two WSR units with another two WSR units violates due process. *See* Dkt. 7, at 10–11.

The Court does agree, however, that plaintiff cannot bring a claim related to transfer out of the WSR, to the extent that he also argues that the risk of contracting COVID-19 from being transferred to another facility is unconstitutional. *See* Dkt. 34, at 15. Plaintiff's allegations about the conditions of transfer are too conclusory to give rise to a standalone claim related to being transferred. *See* Dkt. 7, at 8.

In short, defendants' arguments for dismissal of plaintiff's Eighth Amendment claim lack merit. Therefore, this Court recommends that defendants' motion for judgement on the pleadings

1 | for dismissal of plaintiff's Eighth Amendment claim be denied.

2 | **B. Due Process Violation (Count II)**

3 | Plaintiff brings a claim for violation of due process on the basis that he was deprived of
4 | the privileges of holding a lower-custody status (such as television and a single-bunk cell) when
5 | defendants consolidated WSR units. *See* Dkt. 7, at 10–11. Defendants argue that plaintiff's
6 | claim is not viable. The Court agrees.

7 | Due process-protected liberty interests of prisoners are generally "limited to freedom
8 | from restraint which, while not exceeding the sentence in such an unexpected manner as to give
9 | rise to protection by the Due Process Clause of its own force . . . nonetheless
10 | imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of
11 | prison life." *Sandin v. Conner*, 515 U.S. 472, 483–84 (1995). Applying this law, courts have not
12 | found actionable due process claims where a prisoner complains of a loss of single-cell status.
13 | *See, e.g.*, *Waters v. Flores*, No. 1:10-CV-02169-AWI, 2012 WL 484530, at *3 (E.D. Cal. Feb.
14 | 14, 2012) (citing authorities for the proposition that "[t]o the extent that Plaintiff attempts to state
15 | a due process claim based upon the revocation of his single cell status, Plaintiff has no
16 | constitutional right to have his own cell."). Similarly, courts have rejected claims related to loss
17 | of televisions (*see, e.g.*, *Martin v. Hurtado*, No. CIV07CV0598BTMRBB, 2008 WL 4145683, at
18 | *13 (S.D. Cal. Sept. 3, 2008) ("Plaintiff's Complaint fails to state a procedural due process claim
19 | because the deprivation of his television does not pose an 'atypical and significant hardship'
20 | when compared to 'the ordinary incidents of prison life.'" (citing *Sandin*, 515 U.S. at 484)) or
21 | transfers (*e.g.*, *Kapetan v. Cox*, No. 313CV00171MMDVPC, 2015 WL 13738816, at *3 (D. Nev.
22 | Aug. 31, 2015) ("[P]laintiff does not have a cognizable liberty interest under
23 | the Due Process Clause in avoiding transfer between prisons."). The Court finds that plaintiff
24 |

REPORT AND RECOMMENDATION - 12

has not shown deprivation of a protected liberty interest related to his allegations under Count II and accordingly that Count II should be dismissed. Leave to amend should not be granted, since it is not apparent that plaintiff could amend this claim to render it viable.

Defendants argue that dismissal should be with prejudice, but they do not explain why the Court should depart from the general rule that such a dismissal is without prejudice. *See, e.g.*, *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1108 (9th Cir. 2003). Accordingly, the Court recommends dismissing this claim without leave to amend and without prejudice.

### C. Equal Protection Violation (Count III)

Plaintiff alleges that unsafe overcrowding violates his right to equal protection, although he does not identify a suspect class or the alleged basis for the discrimination that he claims to be subjected to. *See* Dkt. 7, at 11–12. Defendants argue that this claim should be dismissed; the Court agrees.

A plaintiff can establish an Equal Protection violation by demonstrating that a defendant intentionally discriminated on the basis of the plaintiff's membership in a protected class. *Barren v. Harrington*, 152 F.3d 1193, 1194–95 (9th Cir. 1998); *Damiano v. Fla. Parole & Probation Comm'n*, 785 F.2d 929, 932–33 (11th Cir. 1986). *But see United States v. Whitlock*, 639 F.3d 935, 941 (9th Cir. 2011) (stating that prisoners do not constitute a suspect class for equal protection purposes). Here, however, plaintiff identifies no protected class; indeed, he appears to argue that prisoners in the DOC are being treated unconstitutionally. But prisoners are not a protected class. Nor has he identified any allegations of intentional discrimination.

Alternatively, a plaintiff can make an equal protection claim by establishing that the defendant intentionally treated the plaintiff differently from other similarly situated individuals without a rational basis for the difference in treatment. *Engquist v. Or. Dep't of Agric.*, 553 U.S.

591, 601 (2008); *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (recognizing the "class of one" theory). To support such a "class of one" equal protection claim, "a plaintiff must identify the group of individuals with whom he is similarly situated, and identify his allegedly intentional and disparate treatment." *Chappell v. Bess*, No. 2:01-cv-01979 KJN P, 2012 WL 3276984, at *19 (E.D. Cal. Aug. 9, 2012) (citing *McCollum v. Cal. Dep't of Corrs. and Rehab.*, 647 F.3d 870, 880–81 (9th Cir. 2011)). Here, however, plaintiff is not alleging that he is being treated differently than others similarly situated. Indeed, he asserts that he and others at the WSR are all being similar mistreated. And he identifies a rational basis as the explanation for defendants' actions: attempts to consolidate and close the WSR.

Plaintiff's allegations do not amount to a cognizable Equal Protection claim. For the same reasons as discussed related to plaintiff's due process claim, this claim should be dismissed without prejudice and without leave to amend.

### D. Qualified Immunity

Defendants alternatively argue that qualified immunity bars plaintiff's claims for damages. *See* Dkt. 34, at 21. Having concluded that plaintiff has not presented the Court with viable Fourteenth Amendment claims, the Court need not decide whether qualified immunity also bars requests for damages on those claims. *See Taylor v. Barkes,* 575 U.S. 822, 824 (2015) (per curiam). Regarding the Eighth Amendment claim, the Court finds that at this stage and based on plaintiff's allegations, qualified immunity does not bar damages for that claim.

"[Q]ualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To be clearly established, a

1 right must be sufficiently clear "that every 'reasonable official would [have understood] that

2 what he [or she] is doing violates that right.'" *Reichle v. Howards*, 566 U.S. 658, 664

3 (2012) (quoting *Ashcroft v. Al–Kidd*, 563 U.S. 731, 741 (2011)). This immunity protects "all but

4 the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S.

5 335, 341 (1986).

6       Defendants argue that plaintiff has failed to establish any clearly established law

7 preventing their alleged actions. Inasmuch as defendants characterize plaintiff's claim as one for

8 a television or a single-person cell, as the Court explained above, plaintiff's Eighth Amendment

9 claim is for mismanaging the COVID-19 outbreak at the MCC WSR in such a manner as to

10 create a heightened risk of contracting COVID-19, including deterring self-report of symptoms.

11       Although the COVID-19 outbreak is novel, it is decidedly not a novel proposition that

12 prison officials cannot knowingly subject prisoners to a heightened risk of contracting a

13 communicable disease. Existing precedent clearly establishes the right of an individual in

14 custody to protection from heightened exposure to a serious communicable disease.

15 *See, e.g.*, *Helling*, 509 U.S. 25, 33 (1993) (finding that prison officials may not "be deliberately

16 indifferent to the exposure of inmates to a serious, communicable disease" under the Eighth

17 Amendment); *see also Hutto v. Finney*, 437 U.S. 678, 682–83 (1978) (affirming a finding of an

18 Eighth Amendment violation where a facility housed individuals in crowded cells with others

19 suffering from infectious diseases); *Andrews v. Cervantes*, 493 F.3d 1047, 1050 (9th Cir.

20 2007) (recognizing a cause of action under the Eighth Amendment and 42 U.S.C. § 1983 for an

21 alleged policy of not screening inmates for infectious diseases and for housing contagious and

22 healthy individuals together during a known "epidemic of hepatitis C"); *Trevizo v. Webster*, No.

23 CV 17-5868-MWF (KS), 2018 WL 5917858, at *4 (C.D. Cal. Sept. 6, 2018) ("It is well accepted

24

1 that such 'substantial risks of harm' include 'exposure of inmates to a serious, communicable
2 disease[,]'" including MRSA); *Loftin v. Dalessandri*, 3 F. App'x 658, 663 (10th Cir.
3 2001) (recognizing an Eighth Amendment claim for knowingly housing the defendant in a cell
4 with individuals who had tested positive for tuberculosis).
5     The Court readily joins other district courts in concluding that cognizable allegations of
6 deliberate indifference to the risk of contracting COVID-19 in a prison setting escape the
7 qualified immunity bar. *See, e.g.*, *Jones v. Sherman*, No. 121CV01093DADEPGPC, 2022 WL
8 783452, at *10 (E.D. Cal. Mar. 11, 2022) ("The Court also finds that the law
9 is clearly established that individuals in government custody have a constitutional right to be
10 protected against a heightened exposure to serious, easily communicable diseases, and that this
11 this clearly established right extends to protection from COVID-19."); *Jones v. Pollard*, No. 21-
12 CV-162-MMA (RBM), 2022 WL 706926, at *9 (S.D. Cal. Mar. 9, 2022) ("Existing precedent
13 clearly establishes the right of an individual in custody to protection from heightened exposure to
14 a serious communicable disease."); *Maney v. Brown*, No. 6:20-CV-00570-SB, 2020 WL
15 7364977, at *6 (D. Or. Dec. 15, 2020) ("The law is clearly established that individuals in
16 government custody have a constitutional right to be protected against a heightened exposure to
17 serious, easily communicable diseases, and the Court finds that this clearly established right
18 extends to protection from COVID-19.").
19     At least at the pleadings stage, the Court finds that qualified immunity does not apply to
20 the Eighth Amendment claim, as alleged.

### E. Class Action Complaint

22     Defendants argue that because plaintiff "styles his complaint" as a class action complaint
23 but has not complied with the requirements to bring a class action, his complaint should be
24

dismissed. *See* Dkt. 34, at 23. Defendants have correctly identified that plaintiff will not be allowed to litigate this matter on behalf of a class. However, he may represent himself, and the Court interprets his complaint as bringing claims on behalf of himself, only.

## CONCLUSION

For the reasons set forth above, the Court recommends granting in part and denying in part the motion for judgment on the pleadings. Dkt. 34. Plaintiff's claims under the Fourteenth Amendment should be dismissed without leave to amend and without prejudice, but his Eighth Amendment claim should not be dismissed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **July 15, 2022,** as noted in the caption.

Dated this 30th day of June, 2022.

J. Richard Creatura
Chief United States Magistrate Judge