UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

TONY PENWELL,

        Plaintiff,

v.

CHERYL STRANGE, *et al.*,

        Defendants.

CASE NO. 3:21-cv-05722-RJB-GJL

REPORT AND RECOMMENDATION

NOTED FOR: September 15, 2023

    This civil rights matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1). Before the Court is Defendants' Motion for Summary Judgment. Dkt. 81.

    Plaintiff, who proceeds *pro se* and *in forma pauperis*, and who is incarcerated at the Washington State Penitentiary in Walla Walla, brings suit against the Department of Corrections ("DOC") Secretary and two senior Washington State Reformatory ("WSR") officials arising out of Plaintiff's previous incarceration at WSR, part of the Monroe Correctional Complex ("MCC"). Plaintiff challenges these officials' handling of the COVID-19 pandemic at WSR, after the DOC decided to consolidate units within the WSR as part of the planned closure of that

facility. In his only claim now remaining in this action, Plaintiff asserts that the resulting conditions at the WSR violate the Eighth Amendment and seeks monetary damages.

Defendants now seek summary judgment on Plaintiff's remaining Eighth Amendment claim. *See* Dkt. 81. As discussed below, the Court recommends that Defendants' motion be **GRANTED** and this matter **DISMISSED** with prejudice.

## I. BACKGROUND

**A.    Plaintiff's Claims**

Plaintiff brought suit in this Court in September 2021, in the midst of the COVID-19 pandemic, alleging claims for Eighth and Fourteenth Amendment violations and seeking injunctive relief and damages. *See* Dkt. 1. According to Plaintiff, the WSR is a four-unit facility with 158 single-person cells that are either 54 or 60 square feet in size. Dkt. 7 at 5.

Plaintiff asserts that during the consolidation of WSR units, and despite being in the midst of a pandemic, Defendants required prisoners within two of the four units to double-cell with prisoners in the other two units, resulting in "dangerous [o]vercrowding conditions." Dkt. 7 at 5–6. He alleges that as a result, 570 prisoners were housed in two units, when four units were designed to hold 720 prisoners. Dkt. 1, at 5–6. Plaintiff also asserts that this Court has previously entered a (since vacated) consent decree, in a 1978 lawsuit, barring the WSR from holding prisoners in such overcrowded conditions. Dkt. 1, at 6.

Plaintiff claims that this double-celling created dangerous conditions, including the potential for violence, and ventilation issues where the WSR already lacked adequate ventilation, heating and cooling. Dkt. 7 at 7. He also claims that the noise level in the WSR is "out of control," that he was required to share a toilet with his cellmate, and that consolidation made it impossible to maintain space from other prisoners during a pandemic. Dkt. 7 at 7–8; Dkt. 86 at 27, ¶ 29.

REPORT AND RECOMMENDATION - 2

1      According to Plaintiff, the only meaningful safety measure that Defendants offered

2   during the pandemic was face masks. *See* Dkt. 7 at 9. He claims that Defendants dismantled

3   COVID-19 "stations" and, that in order to deter prisoners from reporting illness that might

4   accelerate the WSR's closure, Defendants imposed punitive conditions on those who report

5   COVID-19 symptoms. *See* Dkt. 7 at 9; Dkt. 86 at 28, ¶ 33. The Complaint originally sought both

6   damages and injunctive relief. Dkt. 7, at 14.

7      Plaintiff filed a Supplemental Complaint, with leave of the Court, on November 22, 2022.

8   The Supplemental Complaint alleges that WSR nurses failed to follow COVID-19 medical

9   protocols, infected laundry was "sent out through normal channels of operations spreading the

10  virus," and that Plaintiff was infected a second time with COVID-19, and hospitalized, in

11  December 2021. Dkt. 76 at 3–5.

12  **B.    Defendants' Submissions**

13     Defendants have submitted Declarations from Rachel Symon, MCC Health Services

14  Manager (Dkt. 84), Robert Landis, MCC Consolidated Facilities Manager (Dkt. 88), Diana Rule,

15  MCC Legal liaison Officer (Dkt. 89), and two Declarations from Defendant Melida Ferrell,

16  MCC Associate Superintendent  (Dkts. 83, 91-1 at 5–7). Defendants have also submitted two

17  Declarations from their counsel attaching Declarations in a related matter from Donald

18  Holbrook, DOC Assistant Secretary (Dkt. 82-1 at 2–9), Dianna Rule (Dkt. 82-1 at 11–13) and

19  Alonso Salazar, M.D., DOC's Statewide Director of Infection and Prevention Control (Dkt. 90-

20  1). Defendants also rely upon an earlier-submitted counsel Declaration attaching the Declarations

21  of Michael Obenland, DOC's Assistant Secretary (Dkt. 28 at 155–166), Lara B. Strick, M.D.,

22  M.S., DOC's Statewide Infectious Disease Physician (Dkt. 28 at 168–219), Jack Warner, MCC

23  Superintendent (Dkt. 28 at 221–224) and Dr. Areig Awad, MCC Facility Medical Director (Dkt.

24

28 at 226–228). The Court summarizes highlights of the testimony below, and discusses additional relevant evidence in its substantive analysis of Plaintiff's claims.

Superintendent Warner states that MCC consists of several separate living units including WSR (at issue here), the Special Offender Units ("SOU"), Intensive Management Unit ("IMU"), Twin Rivers Unit ("TRU") and a Minimum Security Unit ("MSU"). Dkt. 28 at 221, ¶ 3. MCC has capacity to house a total of 2400 male inmates. *Id*. WSR, which was comprised of four units, had a total capacity of 720. *Id*. at 222, ¶ 5. The consolidation at issue in this case initially closed WSR's C and D units, whose inmates were transferred to the A and B units—where each cell housed two prisoners. *Id*. at ¶ 9. Plaintiff was transferred to A unit. *Id*. at ¶ 4.

WSR's A and B units each have the capacity to house 316 individuals. Dkt. 28 at 223, ¶¶ 11, 12. As of December 2, 2021, there were 190 inmates remaining in A unit and B unit had been closed. *Id*. at ¶¶ 10, 11. Mr. Warner states that there have been no fights in A or B units since consolidation, that WSR resolved maintenance issues when they learned of such issues, that unit staff maintained the WSR noise level, and that there were no impacts on heating or cooling, nor concerns with ventilation in the A or B units after consolidation. Dkt. 28 at 223–224.

Assistant Secretary Obenland states that the DOC "has seen a 54% decrease in prison admissions from March 2020 to June 2021 compared to the same time frames in 2019 and 2020." Dkt. 28 at 156, ¶ 4. As of July 20, 2021, approximately 4,000 of 17,000 prison beds in Washington State were empty, and DOC expects that number to increase. *Id.* In addition, the 2021 to 2023 State budget requires DOC to reduce prison spending by $80 million over that period. Dkt. 28 at 157, ¶ 6. In the face of this decrease in funding and increase in vacant beds, DOC implemented a plan to consolidate units within facilities, then to conduct "low-impact" closures followed by "high-impact" closures. Dkt. 28 at 158–159.

1          Mr. Obenland states that individuals in C and D (long-term minimum custody level) units
2  of the WSR were consolidated into A and B (medium custody level) units of the WSR in
3  anticipation of the closure of all WSR units. Dkt. 28 at 159–160, ¶12. He states that the reason
4  those housed in C and D units were moved to A and B units was because medium custody level
5  prisoners cannot be housed in minimum custody units. *Id*. Mr. Obenland states that Plaintiff was
6  moved from a single-cell in C unit to a double-cell in B unit. Dkt. 28 at 160, ¶ 13. He states that
7  the "vast majority of cells within DOC are occupied by two incarcerated individuals." *Id.* Mr.
8  Obenland states that Plaintiff's stay at WSR's B-unit was designed to be temporary. Dkt. 28 at
9  161, ¶ 14. Finally, he states that all units at WSR are now closed to the general population of
10 incarcerated individuals except for A unit, which still houses approximately 50 inmates with
11 elevated medical needs while they receive special care only available at MCC. Dkt. 28 at 162,
12 ¶ 15.
13         Defendants also rely on the Declarations of DOC infections disease specialists Lara B.
14 Strick, M.D., and Alonso Pezo Salazar, M.D. Dr. Strick states that DOC's response to the
15 COVID-19 pandemic "has been comprehensive and extensive," requiring tens of thousands of
16 staff work hours and expenditures of millions of dollars. Dkt. 28 at 169–170. She states that
17 DOC's COVID-19 guidance has been regularly updated and improved over time. *Id.*; *see also*
18 Salazar Declaration, Dkt. 28 at 3–4 (noting DOC is on the 34th version of its COVID-19
19 protocols). Dr. Strick states that the guidance requires isolating and masking by symptomatic
20 prisoners, quarantining exposed close contacts and cellmates, quarantining confirmed cases and
21 symptomatic patients, and testing. Dkt. 28 at 169–170; *see also* Ex. 1 to Strick Declaration, Dkt.
22 28 at 175–219 (Version 29 of the protocol). Finally, Dr. Strick states that DOC offered all DOC
23 patients COVID-19 vaccinations. Dkt. 28 at 172 ¶ 12; *see also* Salazar Declaration, Dkt. 28 at 5–
24

7, ¶¶ 7, 8, 13 (noting current availability of vaccinations, bivalent boosters, and COVID-19 treatment with Remdsivir and Paxlovid).

C.     **Procedural History**

Plaintiff previously filed motions to appoint counsel, to certify a class action, and for a temporary restraining order ("TRO"). Dkts. 7–9. The Court denied Plaintiff's request for a TRO, explaining that the Court lacked authority to grant relief that would direct DOC to return prisoners to single-occupant cells or that would involve prisoners other than Plaintiff. *See* Dkt. 13, at 7. The Court concluded that Plaintiff had not shown a likelihood of success on the merits or serious questions going to the merits of his claims. Dkt. 13, at 11; *see also* Dkt. 29 (order adopting the report and recommendation).

The Court also attempted to appoint counsel to represent Plaintiff, but the Court's appointment was contingent on the identification of counsel willing to represent Plaintiff on a *pro bono* basis. Dkt. 23; *see also* Dkt. 33 (denying Defendants' objections to the appointment of counsel). The Court was unable to locate counsel willing to represent Plaintiff in the matter. *See* Dkt. 36. Therefore, Plaintiff continues to represent himself, *pro se*. The Court denied Plaintiff's request for class certification. Dkts. 24, 31.

On March 15, 2022, Defendants filed a motion for judgment on the pleadings, seeking dismissal of all of Plaintiff's claims. Dkt. 34. The Court granted the motion in part, dismissing Plaintiff's Fourteenth Amendment claims and finding his request for injunctive relief to be moot in light of his transfer to a different facility. Dkts. 47, 61. Only Plaintiff's Eighth Amendment claims for damages remain outstanding. *Id*.

Defendants filed their motion for summary judgment on January 13, 2023. Dkt. 81. Plaintiff filed a response on February 4, 2023 (Dkt. 86), which the Court construed as containing a request for a continuance pursuant to Fed. R. Civ. P. 56(d) to permit time for additional

discovery regarding Plaintiff's Eighth Amendment claim, including his recently-filed Supplemental Complaint. Dkt. 93. On March 8, 2023, the Court granted Plaintiff's request for a continuance and reopened discovery, setting a new discovery deadline of May 5, 2023 and renoting the summary judgment motion for May 19, 2023. *Id*.

On March 29, 2023, Plaintiff filed a motion to stay all proceedings in this matter due to a recently diagnosed medical condition. Dkt. 94. The Court declined a full stay of proceedings (without prejudice to a renewed request if Plaintiff's health were to so require), but granted an additional 60-day continuance of the summary judgment motion to conduct additional discovery and to file optional supplemental briefing. Dkt. 97. Plaintiff did not file a supplemental response.

## II. LEGAL STANDARD

**A.  Standard of Review**

Summary judgment is appropriate when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

The moving party bears the initial burden of showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Where the moving party does not bear the burden at trial, it can carry its initial burden by presenting evidence that negates an essential element of the nonmoving party's case, or by establishing that the nonmovant lacks the quantum of evidence needed to satisfy its burden at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

1        If the moving party meets its initial responsibility, the burden then shifts to the
2 nonmoving party to establish a genuine issue of material fact for trial. *Matsushita Elec. Indus.*
3 *Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986). Genuine disputes are those for which
4 the evidence is such that a "reasonable jury could return a verdict for the nonmoving party."
5 *Anderson*, 477 U.S. at 257. Material facts are those which might affect the outcome of the suit
6 under governing law. *Id.* A mere scintilla of evidence is insufficient to create a factual dispute.
7 *Id.* at 252. Likewise, the nonmoving party cannot "defeat summary judgment with allegations in
8 the complaint, or with unsupported conjecture or conclusory statements." *Hernandez v.*
9 *Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003).

10        Allegations based merely on the plaintiff's belief are insufficient to oppose summary
11 judgment, as are unsupported conjecture and conclusory statements. *Id.*; *McElyea v. Babbitt*, 833
12 F.2d 196, 197–98 n.1 (9th Cir. 1987). In ruling on a motion for summary judgment, the Court
13 must draw all reasonable inferences in favor of the nonmoving party, *Matsushita Elec. Indus.*
14 *Co.*, 475 U.S. at 587, and may not weigh the evidence or make credibility determinations,
15 *Anderson*, 477 U.S. at 248.

**B.**     **Section 1983 Standard**

17        In order to recover pursuant to 42 U.S.C. § 1983, a plaintiff must prove that: (l) the
18 conduct complained of was committed by a person acting under color of state law and that (2)
19 the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or
20 laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other*
21 *grounds, Daniels v. Williams*, 474 U.S. 327 (1986). The causation requirement of § 1983 is
22 satisfied only if a plaintiff demonstrates that a defendant did an affirmative act, participated in
23 another's affirmative act, or omitted to perform an act which he or she was legally required to do

that caused the deprivation complained of. *Arnold v. Int'l Bus. Machines Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981).

### III. DISCUSSION

**A.    Defendants' Motion to Strike**

As a threshold matter, Defendants seek to strike portions of Plaintiff's Declaration and his briefing submitted in response to their motion, on the ground that the statements are made without personal knowledge or contain inadmissible expert or medical opinions. Dkt. 87 at 1–2.[1]

Only admissible evidence may be considered in ruling on a motion for summary judgment. *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002); *see also* Fed. R. Civ. P. 56(e). A party may object to cited documentation asserting the material would not be admissible in evidence. Fed. R. Civ. P. 56(c)(2). Admissible declarations or affidavits must be based on personal knowledge, must set forth facts that would be admissible in evidence, and must show the declarant or affiant is competent to testify on the matters stated. Fed. R. Civ. P. 56(c)(4). However, at the summary judgment stage, the Court is focused on the admissibility of the content, rather than the form, of the evidence. *Fraser v. Goodale*, 342 F.3d 1032, 1036–37 (9th Cir. 2003), *Block v. City of Los Angeles*, 253 F.3d 410, 418–19 (9th Cir. 2001) ("To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rule of Civil Procedure 56.").

Objections to evidence because the evidence is irrelevant, speculative, argumentative, vague and ambiguous, or because it constitutes an improper legal conclusion, is duplicative of

---

[1] Specifically, Defendants seek to strike paragraphs 7, 24, 25, 27, 35, 36, 40, 43, and 44 of Plaintiff's Declaration (Dkt 86 at pp 22–31) for lack of knowledge, and paragraphs 26, 28, 36, 39, 42 and 44 as improper expert testimony. From Plaintiff's brief (Dkt. 86 at 1–20), Defendants seek to strike p. 3, lines 16–19 and 23–24, and lines 22–24 from an unspecified page.

the summary judgment standard itself. *See Burch v. Regents of Univ. of Califo*rnia, 433 F. Supp. 2d 1110, 1119–20 (E.D. Cal. 2006). Accordingly, the Court will not consider materials (or portions of materials) that do not meet this standard, although it declines to strike them.

**B.     Personal Participation/Supervisory Liability**

Plaintiff names as Defendants only senior supervisory DOC employees—the DOC Secretary (Defendant Strange), the former WSR Correctional Program manager (Defendant Ferrell) and the former WSR Superintendent (Defendant Jackson). Defendants assert that Plaintiff has not adduced evidence that the Defendants personally participated in the alleged Eighth Amendment violations. Dkt. 81 at 18–20.

"Section 1983 has a causation requirement, with liability extending to those state officials who subject, or cause to be subjected[,] an individual to a deprivation of his federal rights." *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 915 (9th Cir. 2012) (en banc) (alterations adopted) (internal quotation marks omitted). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Id.* (citing *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)). "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988).

Vicarious liability may not be imposed on supervisory employees for the acts of their subordinates in an action brought under 42 U.S.C. § 1983. *Lemire v. California Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1074 (9th Cir. 2013). A supervisor may be held liable under § 1983 only "if he or she was personally involved in the constitutional deprivation or a sufficient causal connection exists between the supervisor's unlawful conduct and the constitutional violation."

*Jackson* v. *City of Bremerton*, 268 F.3d 646, 653 (9th Cir. 2001). Supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989*); accord Starr v. Baca*, 652 F.3d 1202, 1205–06 (9th Cir. 2011); *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009). Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient. *See Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

Defendant Ferrell has presented uncontested testimony that she was not involved in the decision to consolidate the units at WSR or the decision to close WSR. Dkt. 83 at ¶ 3. In addition, she was never informed by Plaintiff that he had concerns about the various impacts of the consolidation he raises in this case—namely ventilation,[2] potential violence or noise in his new unit. *Id*. at ¶¶ 5–8. Plaintiff likewise raised no concerns regarding the handling of laundry. *Id.* at 9. Finally, Defendant Ferrell had no knowledge of, and no responsibility for, the conduct of nursing staff at WSR. *Id.* at 10. Plaintiff has provided no competent evidence to the contrary. Plaintiff has therefore not established Defendant Ferrell's personal participation in any violation of his Eighth Amendment rights.

The evidence supports Defendant Strange's participation in the decision to close and to consolidate units at WSR. *See* Dkt. 28 at 165–66 (Memo from Defendant Strange announcing unit closures). It is a reasonable inference from this evidence that Defendant Jackson, then the Superintendent of WSR, also personally participated in the consolidation. But the consolidation alone is not sufficient to support an Eighth Amendment violation—even if it could be presumed

---

[2] Plaintiff's Declaration states that ventilation has been a longstanding issue at WSR, and has been raised at tier representative meetings in the past. Dkt. 86 at 29. But nothing in Plaintiff's evidence demonstrates that he raised ventilation issues as a concern related to the consolidation.

REPORT AND RECOMMENDATION - 11

to lead to overcrowding. *Rhodes v. Chapman*, 452 U.S. 337, 348–49 (1981). Plaintiff has not submitted evidence that Defendants Strange and Jackson were aware of any of the concerns he has raised regarding the impact of the consolidation, nor that they directed or knew of and failed to prevent them. He has therefore not established the personal participation or supervisory liability of Defendants Strange and Jackson.

Plaintiff argues Defendants have waived any argument they were not informed about his concerns, because his grievance regarding the consolidation's double-celling was returned to him. Dkt. 86 at 4. Defendants respond that the grievance was returned because it was not within the jurisdiction of the grievance system to address a legislative decision. Dkt. 89-1 at 31. Nothing in the response precluded the filing of grievances. *Id*. More importantly, there is no evidence any of the Defendants was aware of, or participated in, the return of the grievance, nor that the grievance could have informed any of them of the concerns Plaintiff raises here.

Plaintiff has not established the personal participation of any of the Defendants in the violation of his Eighth Amendment rights. While summary judgment dismissing Plaintiff's remaining claim is appropriate on this ground alone, the Court also addresses the merits of Plaintiff's Eighth Amendment claim.

**C.     Eighth Amendment Claim**

Plaintiff alleges that Defendants violated his Eighth Amendment rights by creating "dangerous overcrowding conditions" during the COVID-19 pandemic, causing increased risk of violence, noise and lack of ventilation and potential COVID-19 exposure. Dkt. 7, at 5–7. Plaintiff also contends Defendants' COVID-19 response was inadequate. *Id*; at 8; Dkt. 76 at 2.

Prison officials "must provide humane conditions of confinement; [they] must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates[.]" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)

(internal citation and quotation marks omitted). Two requirements must be met to prevail on such an Eighth Amendment claim. "First, the deprivation alleged must be, objectively, sufficiently serious." (internal citation and quotation marks omitted). "[A] prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities[.] For a claim (like the one here) based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* (internal citation and quotation marks omitted). "The circumstances, nature, and duration of a deprivation of these necessities must be considered in determining whether a constitutional violation has occurred." *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000). "Some conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets." *Wilson v. Seiter*, 501 U.S. 294, 304 (1991) (emphasis omitted).

"The second requirement follows from the principle that only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." *Id.* (internal citation and quotation marks omitted). "[A] prison official must have a 'sufficiently culpable state of mind.'. . . In prison-conditions cases that state of mind is one of 'deliberate indifference' to inmate health or safety[.]" *Id.* (internal citations omitted). This means that the official must "know[] that [the prisoner] face[s] a substantial risk of serious harm and disregard[] that risk by failing to take reasonable measures to abate it." *Id.* at 847. Thus, a prison official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Id*. "In addition, prison officials who actually knew of a substantial

risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id*. at 844.

        1.      <u>Overcrowding</u>

The Court notes that Defendants have submitted evidence that the number of prisoners in the A-B units was below their capacity and therefore not overcrowded. *See* Dkt. 28 at 223, ¶ 11. However, even if they exceeded capacity, overcrowding, by itself, does not constitute a constitutional violation. *See Doty v. Cnty. of Lassen*, 37 F.3d 540, 545 n.1 (9th Cir. 1994) ("[O]vercrowding itself is not a violation of the Eighth Amendment . . . ."); *Hoptowit v. Ray*, 682 F.2d 1237, 1248–49 (9th Cir. 1982), *abrogated in part on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995); *Rhodes*, 452 U.S. at 348–49 (1981) (same). Instead, the overcrowding must be shown to have led to specific conditions violating the Eighth Amendment. *See Balla v. Idaho State Bd. of Corr.*, 869 F.2d 461, 471 (9th Cir. 1989) ("Technically, it may be said that the prison is 50% 'overcrowded,' but this fact has no constitutional significance standing alone . . . . Only when overcrowding is combined with other factors such as violence or inadequate staffing does overcrowding rise to an eighth amendment violation."); *see also Akao v. Shimoda*, 832 F.2d 119, 120 (9th Cir. 1987).

Plaintiff alleged that double-celling and overcrowding would lead to violence, excessive noise and inadequate ventilation. *See* Dkt. 7 at 5–7. However, Plaintiff has not submitted any evidence that his speculated harms ever occurred. On the other hand, Defendants submitted evidence that there were no fights in A or B unit after consolidation, that the noise level was maintained by unit staff, and that the ventilation systems were maintained with regularly changed filters meeting industry standards—both before and after the consolidation. Dkt. 28 at 223 ¶¶ 12, 14; Dkt. 83 at ¶ 6; Dkt. 88 at ¶ 3.

Further, Plaintiff's allegations related to or allegedly resulting from the ostensible overcrowding including increased noise, lack of ventilation, and various other matters, also fail to amount to allegations that he has been deprived of the minimal civilized measures of life's necessities to such an extent as to violate the Eighth Amendment. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Norwood v. Hubbard*, No. 1:09-cv-00690-AWI-GSA, 2009 WL 2982653, at *1 (E.D. Cal. Sept. 11, 2009) ("[R]outine discomfort inherent in the prison setting does not rise to the level of a constitutional violation.") (internal quotations and citations omitted).

Moreover, Defendants' evidence shows Plaintiff was double-celled at WSR only temporarily; he was moved from his previous housing into a double cell in "A" unit during the consolidation, and on May 16, 2022, was transferred from WSR to a different facility, where he is expected to remain. Dkt. 82-1 at ¶ 3. *See Anderson v. Cnty. of Kern*, 45 F.3d 1310, 1315 (9th Cir.), *opinion amended on denial of reh'g,* 75 F.3d 448 (9th Cir. 1995) (no Eighth Amendment violation when plaintiff did not establish challenged conditions were "more than temporary").

    2.    <u>COVID-19 Risk</u>

Plaintiff also alleges that ordering the consolidation during the COVID-19 pandemic shows that Defendants were deliberately indifferent to the risk of COVID-19, that Defendants' COVID-19 response was inadequate, and that Defendants imposed punitive COVID isolation conditions in order to suppress reported cases and to hasten their consolidation plans. Dkt. 7 at 8; Dkt. 76 at 2. However, officials' implementation of practices that could have resulted in overcrowding during the COVID-19 pandemic does not necessarily amount to an Eighth Amendment violation. *See Sanford v. Eaton*, No. 1:20-CV-00792-BAM-PC, 2021 WL 3021447, at *7 (E.D. Cal. July 16, 2021), *report and recommendation adopted in part, rejected in part*, 2022 WL 168530 (E.D. Cal. Jan. 19, 2022) (holding that in order to state a cognizable Eighth Amendment claim, plaintiff must provide more than generalized allegations that Defendants

have not done enough regarding overcrowding to control the spread of the virus.); *Vandagriff v. Hill*, No. 2:22-cv-0603-KJM-KJN, 2022 WL 1570942, at *3 (E.D. Cal. May 18, 2022) (same).

Here, Defendants have presented undisputed evidence that DOC took a comprehensive and evolving approach to address the risks of COVID-19, establishing detailed protocols to mitigate the transmission of the virus at its facilities. *See* Dkt. 28 at 169, ¶¶ 4–8 and Att. 1; Dkt. 90-1 at ¶¶ 3–4. The protocols touch nearly every aspect of DOC's operations, consumed extensive staff work hours, and required the expenditure of millions of dollars. Dkt. 28 at 169, ¶ 4. Among the safeguards contained in earlier versions of the protocol were masking requirements, screening of transferees and incoming prisoners, quarantining exposed close contacts and cellmates, and quarantining confirmed cases and symptomatic patients. *Id*. In addition, DOC's protocols directly addressed measures to mitigate the transmission of the disease through transfers, including screening and quarantine. Dkt. 82-1 at 6–7, ¶ 12.

Moreover, as knowledge and available methods changed over time, the protocols have adapted and evolved; as of January 17, 2023, DOC was on its 34th iteration of the protocol. Dkt. 90-1 at 3, ¶ 4. The protocol now also includes detailed provisions addressing such safeguards as testing, vaccination and boosters, and the availability of effective antiviral and antiretroviral treatment medications. Dkt. 29 at Ex. 1; Dkt. 90-1 at ¶¶ 3–4, 13.

Defendants' evidence shows they have reasonably responded to the risk of COVID-19 at DOC facilities. *See Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 636–38 (9th Cir. 2021) (finding detainees failed to demonstrate ICE acted with deliberate indifference where ICE complied with CDC interim guidance for its detention facilities, enacted system for reporting suspected or confirmed COVID-19 cases on expedited timeframe, and enabled discretionary release of at-risk detainees); *Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 330 (3rd Cir.

REPORT AND RECOMMENDATION - 16

2020) ("Nor does a failure to eliminate all [COVID-19] risk establish that the Government was deliberately indifferent to [plaintiffs'] serious medical needs."); *see also Wilson v. Williams*, 961 F.3d 829, 841 (6th Cir. 2020) (finding prison officials took adequate actions to mitigate risk of COVID-19 and that such actions demonstrated a lack of deliberate indifference); *Swain v. Junior*, 961 F.3d 1276, 1287–1289 (11th Cir. 2020) (same).

Furthermore, Defendants do not need to show they eliminated *all* risk of contracting COVID-19 to establish that they were not deliberately indifferent to its risks. That Plaintiff was infected does not show Defendants acted with deliberate indifference. *See Cole v. Sinclair*, No. 3:21-cv-05089-RSM-BAT, 2021 WL 5889377, at *6 (W.D. Wash. November 8, 2021); *Johnson v. Kariko*, No. 320CV05514BHSJRC, 2022 WL 4073087, at *1 (W.D. Wash. June 10, 2022), *report and recommendation adopted,* 2022 WL 4017671 (W.D. Wash. Sept. 2, 2022); *Thibodeaux v. Haynes*, No. C21-5326-BHS-MLP, 2022 WL 1094793, at *1 (W.D. Wash. Feb. 22, 2022), *report and recommendation adopted,* 2022 WL 1092674 (W.D. Wash. Apr. 11, 2022).[3]

Plaintiff contends WSR prisoners reporting COVID-19 symptoms were subjected to punitive isolation conditions, in a deliberate attempt to discourage symptom reporting. Dkt. 7 at 7. Plaintiff offers no competent evidence for this accusation; it is a conclusory allegation based solely upon speculation. Dkt. 86 at 3, 28 ¶ 33. *See Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1028 (9th Cir. 2001) ("[a] plaintiff's belief that a defendant acted from an unlawful motive, without evidence supporting that belief, is no more than speculation or unfounded accusation about whether the defendant really did act from an unlawful motive.").

---

[3] Plaintiff contends medical evidence of his co-morbidities rendering him at greater risk from a COVID-19 infection somehow presents an issue of fact precluding summary judgment. Dkt. 86 at 24–25. But even accepting as true Plaintiff's increased risk, Plaintiff has still raised no issue of fact regarding Defendants' subjective state of mind, nor whether Defendants' COVID-19 response was a reasonable response to the risk.

Defendants, on the other hand, have presented evidence that—unlike prisoners held in punitive isolation—those in medical isolation are permitted access to some of their property, phones, mail and (depending on housing) television. Dkt. 28 at 224, ¶ 16. Dkt. 28 at 171, ¶ 9. Although the procedures require isolation, they are not punitive but are instead necessary to protect MCC staff and inmates. Dkt. 28 at 1, ¶ 17; Dkt. 28 at 171, ¶¶ 9, 10. Indeed, far from discouraging symptom reporting, DOC's policies contain procedures—such testing, screening and contact tracing—to locate potentially unreported or asymptomatic infections. Dkt. 28 at 171–72, ¶¶ 10, 11.

Plaintiff also alleges instances in which DOC protocols may not have been followed at WSR—including nurses' failure to follow protocols and improper laundry handling procedures. Dkt. 76 at 4–5. However, to the extent these alleged lapses could qualify as creating a serious risk of harm,[4] Plaintiff has submitted no evidence that any Defendant knew of and deliberately disregarded any risk. Indeed, Defendants have submitted evidence that they were not aware of such incidents. Dkt. 83 at ¶¶ 9, 10; Dkt. 84 at ¶ 4. Moreover, although Plaintiff is apparently an experienced and prolific user of DOC's grievance system, there is no record he filed grievances or kiosk messages regarding these matters. Dkt. 89; Dkt. 91-1 at 6, ¶ 5.

Plaintiff was required to come forward with evidence that Defendants did not reasonably respond to the risk of COVID-19. Plaintiff offers only conclusory and speculative allegations, which are not sufficient to counter the evidence supplied by Defendants. Therefore, the Court recommends that Defendants be granted summary judgment as to Plaintiff's Eighth Amendment claim and that it be dismissed with prejudice.

---

[4] Plaintiff does not contend he was personally affected by either of these alleged lapses; rather he expresses concern for laundry workers—who are in a facility he has not observed. Dkt. 86 at 28, ¶ 32; Dkt. 91-1 at 6, ¶ 7.

REPORT AND RECOMMENDATION - 18

### D. Qualified Immunity

Defendants also argue they are entitled to dismissal based upon qualified immunity. Because the Court recommends dismissal of Plaintiff's claims on other grounds, the Court does not reach this argument.

### IV. CONCLUSION

The Court recommends that Defendants' motion for summary judgment (Dkt. 81) be **GRANTED** and Plaintiff's claims be **DISMISSED WITH PREJUDICE**.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **September 15, 2023**, as noted in the caption.

Dated this 28th day of August, 2023.

Grady J. Leupold
United States Magistrate Judge